UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIDGETTE D. WOOD, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:04-CV-077 RM |
| ) | |
| INDIANA BUREAU OF MOTOR ) | |
| VEHICLES COMMISSION, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

The Indiana Bureau of Motor Vehicles Commission seeks summary judgment on Ms. Bridgette D. Wood's amended complaint that she was subjected to racial discrimination, a racially hostile work environment, and retaliation in violation of 42 U.S.C. § 2000e *et seq.* For the reasons that follow, the court grants the defendant's motion.

I. BACKGROUND

The following facts are taken from the summary judgment record, and are viewed as favorably to Ms. Wood as is reasonable. Ms. Bridgette Wood is a female African-American who went to work for the Indiana Bureau of Motor Vehicles Commission in 1994. She worked as a part-time customer service representative at the Michigan City license branch. Her duties included processing titles, driver's licenses, and other related documents.

Ms. Wood began to notice what she considered unfair treatment in 1995, and filed several internal complaints with the BMV. Sometime in either 1997 or 1998, Ms. Holly Klare was hired as the manager of the Michigan City license branch. Sometime after Ms. Klare became the manager, she hired a friend of hers, Ms. Osa Nyby, to work at the branch in a job similar to Ms. Wood's job.

In 2001, Ms. Klare, Ms. Pam Crane, Ms. Laura Glinos, Ms. Chris Clagg, Ms. Jennifer Palm, Ms. Osa Nyby (all Caucasian), Ms. Dion Thomas, Ms. Lisa Rose, and Ms. Wood (all African-American) worked at the Michigan City branch. On February 23, 2001, a staff meeting was conducted that might have excluded the African-American employees of the branch. At this staff meeting, employees were permitted to complain about and discuss excluded African-American co-employees, namely Ms. Wood. After the meeting, Ms. Klare told Ms. Wood that some hurtful things were said about Ms. Wood. When disagreements occurred between Caucasian employees and the African-American employees, Ms. Klare would side with the Caucasian employees, particularly when Ms. Nyby was involved in a disagreement with an African-American, and especially when Ms. Nyby had a disagreement with Ms. Wood.

Ms. Nyby began to harass Ms. Wood. She yelled at Ms. Wood, bumped into her, threw a test down in her work area, and falsely accused Ms. Wood of cussing at her. Ms. Wood tried to ignore these harassments, but was reprimanded for the alleged cussing incident before she could provide her side of the story. According to Ms. Wood, Ms. Nyby may or may not have been written up, but Ms. Nyby continually cooperated poorly with her African-American co-employees.

Medical excuses from normal work duties were taken more seriously for Ms. Wagg, a Caucasian employee, than for Ms. Wood, and Caucasian workers were allowed to take breaks from work that the African-American workers were not allowed to take. Ms. Wood felt she couldn't complain about the treatment she was receiving for fear of retribution in the form of false write-ups. When Ms. Wood finally complained to the BMV, an investigation was undertaken. Ms. Wood doesn't recall that internal investigation included interviewing any African-Americans, but she remembers hearing Ms. Klare tell the Caucasian workers to call the Indianapolis office to file counter-balancing complaints.

2

In June 2001, the BMV told Ms. Wood she was being transferred to a license branch in Chesterton; she was never told why she was being transferred. Ms. Wood was unfamiliar with the town of Chesterton and believed that the Chesterton branch only employed Caucasian employees.

Ms. Wood has been afflicted with anemia since the early 1990s, so she easily becomes fatigued. Ms. Wood's treating physician, Dr. Kosinski, gave Ms. Wood an off-work excuse dated July 2, 2001, relating that Ms. Wood was under his care and that she was "unable to relocate for her work at this time." On July 31, Ms. Wood was placed on authorized leave with pay until the BMV could obtain further medical information about her condition. On July 31, the BMV also requested further information from Dr. Kosinski, followed by two more requests on August 20 and August 31. On August 31, the BMV requested Ms. Wood's assistance in obtaining the required medical information for her to continue on authorized leave with pay, and informed her that failure to obtain the information would render her placed on unauthorized leave without pay and subject her to reporting requirements. On September 4, Dr. Kosinski sent the BMV a letter stating Ms. Wood told him it was unnecessary for him to provide any more medical information to the BMV regarding her anemia. On September 20, 2001 the BMV fired Ms. Wood for failing to report for work at the Chesterton branch.

## II. Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could

3

not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

### RACIAL DISCRIMINATION

Ms. Wood alleges she was subjected to discrimination by reason of her being African-American. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Ms. Wood may prove her discrimination claim through direct evidence demonstrating discriminatory intent by setting forth "a 'convincing mosaic' of circumstantial evidence that points directly to a discriminatory reason for the employer's action." Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004) (*quoting* Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004)). Alternatively, Ms. Wood may establish a prima facie case by offering indirect evidence of discrimination under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

4

If Ms. Wood establishes a prima facie case, the burden shifts to the BMV to set forth a legitimate, non-discriminatory reason for its actions and "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000) (*quoting* Texas Dept. of Comm'y Affairs v. Burdine, 450 U.S. 248, 257 (1981)). If the BMV sets forth a legitimate, non-discriminatory reason for its actions, "the inference of discrimination disappears and the plaintiff must prove, by a preponderance of the evidence, that the reasons proffered by the defendant were pretextual for intentional discrimination." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). "A pretext for discrimination . . . means something worse than a business error; pretext means deceit used to cover one's tracks." Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001). "While the *McDonnell Douglas* approach is often called a 'burden shifting' method of proof, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Stockett v. Muncie Transit, 221 F.3d at 1001.

To prevail on her claim that she was subject to discrimination and ultimately transferred to a different branch because of her race, Ms. Wood must show that she belongs to a protected group, she was meeting her employer's legitimate expectations, she suffered an adverse employment action, and other similarly-situated employees outside the protected group were treated more favorably. Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 784 (7th Cir. 2004). While there is no dispute that Ms. Wood satisfies the first two requirements, she can't establish a prima facie case because she didn't suffer an adverse employment action and she can't demonstrate that other similarly-situated employees were treated more favorably.

The BMV says Ms. Wood's transfer cannot be considered an adverse employment action because her job title, requirements, and compensation were the same at the new location. Ms. Wood

5

responds that whether her transfer was an adverse employment action is a material issue of fact for the jury to decide because the transfer required her to travel a farther distance to a location where she had never worked under supervisors she did not know.

To succeed on her claim that she suffered an adverse employment action, Ms. Wood must show that "material harm has resulted from . . . the challenged actions." Hildebrandt v. Illinois Dep't of Corr., 347 F.3d 1014, 1034 n. 13 (7th Cir. 2003); *see also* Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (holding "a material loss of benefits" necessary for an adverse employment action); Stutler v. Illinois Dep't of Corr., 263 F.3d 698, 703 (7th Cir. 2001) (to be actionable, a decision must cause "a significant change in benefits"). "Adverse employment actions include a broad array of actions such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing significant changing benefits." McKenzie v. Milwaukee County, 381 F.3d 619, 625 (7th Cir. 2004). For Ms. Wood's transfer to be actionable, "it must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.

Ms. Wood hasn't disputed the BMV's assertion that she would hold the same position once she was transferred to the Chesterton branch with the same pay, benefits, job description, and responsibilities. Ms. Wood relies on Tart v. Illinois Power Co., 366 F.3d 461 (7th Cir. 2004), to support her contention that traveling a greater distance to a new location to work in an unfamiliar environment for unknown supervisors could, under certain circumstances, constitute an adverse employment action.

Unlike in Tart, where the transferred employees reported to their new location only to discover various inferior conditions with their jobs and location, Ms. Wood never reported to the Chesterton branch. The record does not contain any evidence of the conditions of employment at the Chesterton facility other than conjecture and speculation. This dissimilarity renders Tart unhelpful when resolving whether Ms. Wood's transfer could constitute an adverse employment action.

6

No evidence in the summary judgment record indicates that Ms. Wood's transfer was anything but a lateral transfer to a new location. Lateral transfers without a loss of benefits are not adverse employment actions within the meaning of Title VII. *See* Stutler v. Illinois Dep't of Corr., 263 F.3d at 702-703; Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). Neither are transfers that merely require "an increased distance to travel to work." Hill v. American Gen. Fin., Inc., 218 F.3d 639, 645 (7th Cir. 2000). Even when viewing the facts in the light most favorable to Ms. Wood, no reasonable factfinder could conclude that her transfer to an essentially equivalent position, albeit one that would require her to travel a bit longer (around 30 minutes a day) to a place not of her choosing, amounted to a material harm that would qualify as an adverse employment action under Title VII. *See* Place v. Abbott Lab., Inc., 215 F.3d 803, 810 (7th Cir. 2000).

Moreover, the record does not allow identification of any similarly-situated employee who was treated more favorably than Ms. Wood. McKenzie v. Milwaukee County, 381 F.3d at 626. Instead, the record identifies a similarly-situated employee who incurred the same employment action complained of by Ms. Wood. Ms. Osa Nyby, a seemingly contentious co-employee of Ms. Wood's, also was transferred from the Michigan City branch to a new location farther from her home. The record does not support the contention that the BMV's transfer of either employee was for any other purpose than to remedy the personal conflicts occurring at the Michigan City branch.

Ms. Wood cannot make the requisite prima facie case of racial discrimination, and the BMV is entitled to summary judgment on this claim.

*HOSTILE WORK ENVIRONMENT*

7

Ms. Wood also alleges she was subjected to discrimination based on her race, creating an intimidating, oppressive, hostile, and offensive work environment in violation of 42 U.S.C. § 2000e *et seq*.

> In order to demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that his or her work environment was both subjectively and objectively offensive; one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. The plaintiff must then show that the harassment was based on her membership in a protected class; that the conduct was severe or pervasive; and that there is a basis for employer liability.

Cerros v. Steel Technologies, Inc., 398 F.3d 944, 947 (7th Cir. 2005) (internal citations and quotations omitted). To satisfy the requirement of severity or pervasiveness, "the plaintiff must show that the work environment was both subjectively and objectively offensive . . . within the meaning of Title VII." Smith v. Northeastern Illinois Univ., 388 F3d 559, 566 (7th Cir. 2004). Moreover "the offending behavior 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Pennsylvania State Police v. Suders, __ U.S. ____, 124 S. Ct 2342, 2354 (2004) (*quoting* Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Because Ms. Wood's hostile work environment claim is based on the conduct of her supervisor and her co-workers, the court analyzes the totality of the circumstances, looking at "all instances of harassment by all parties relevant to proving that [the plaintiff's] environment [was] sufficiently severe or pervasive." Mason v. Southern Illinois Univ. at Carbondale, 233 F.3d 1036, 1044-1045 (7th Cir. 2000).

Even when viewing the record in the light most favorable to Ms. Wood – that is, that she found her workplace subjectively hostile – the totality of Ms. Wood's circumstances was insufficiently severe or pervasive to create an objectively hostile work environment within the meaning of Title VII.

Ms. Wood identifies several examples of the hostility of her work environment: her co-employees saying bad things about her at a February 2001 meeting that excluded African-Americans, the way she was treated during the resolution of her ongoing confrontations with Ms. Nyby, the general

8

inability of African-American employees to take the same breaks as the Caucasian employees, and a general feeling that the African-American employees were not treated the same as the Caucasian employees.

The record doesn't support Ms. Wood's assertions that all of these incidents were motivated by race. Ms. Wood seemed to think the February 2001 meeting was not a segregated meeting. She also acknowledges that her supervisor, Ms. Holly Klare, apologized for the "hurtful things" that were said, and the record indicates these types of meetings did not occur again. Even when the court takes what Ms. Wood states is true—that her Caucasian co-employees made inappropriate and offensive statements about her—there is insufficient evidence in the record that the disparaging comments were race-related.

While Ms. Wood asserts the BMV did not conduct a fair investigation of her various confrontations with Ms. Nyby, the evidence in the record shows otherwise. The BMV provides the affidavits of its employees indicating the extent of the investigation. Ms. Klare states she individually counseled both Ms. Nyby and Ms. Wood regarding their personal conflicts. Ms. Patricia Clift, the BMV's Human Resources Director during the investigation, states that she also met with both Ms. Wood and Ms. Nyby regarding the investigation of the personal confrontations, explained the results of the investigation to both, and conveyed the reasons for the transfer of both employees to different branches. Even at her deposition, Ms. Wood could not present adequate evidence that the BMV did not conduct the investigation differently than what it claims it did.

Finally, Ms. Wood alleges various other general discriminatory practices by the BMV suffered by her and her African-American co-employees. For Ms. Wood's hostile work environment claim to survive a summary judgment motion, however, she must point to specific facts and evidence that support her assertions and would allow her to prevail on the claim. Lawrence v. Kenosha County, 391 F.3d at 841-842. General allegations and assertions are not enough.

9

Based on the record before the court, taken as favorably to Ms. Wood as the record will allow, the totality of the circumstances do not show that her work environment was objectively hostile within the meaning of Title VII, and the BMV is entitled to summary judgment on this claim.

*RETALIATORY DISCHARGE*

Finally, Ms. Wood claims she was the victim of retaliation in violation of Title VII based on her complaints about what she believed to be the BMV's discriminatory practices. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." Thus, Title VII "protects persons not just from certain forms of job discrimination, but from retaliation for complaining about the types of discrimination it prohibits." Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).

Ms. Wood can establish a Title VII retaliatory discharge claim by either the direct or indirect methods of proof. Under the direct method she must present direct evidence that the employer "acted based on prohibited animus." Mattson v. Caterpillar, Inc., 359 F.3d 885, 888 (7th Cir. 2004) (*citing* Venturelli v. ARC Cmty. Servs., Inc., 350 F.3d 592, 599 (7th Cir. 2003)); *see also* Hudson v. Chicago Transit Authority, 375 F.3d 552, 559 (7th Cir. 2004)("inferences and circumstantial evidence cannot be used to establish a prima facie case for retaliation under the direct evidence test."). Direct evidence is evidence that, if believed by the factfinder, proves the fact in question "without reliance on inference or presumption." Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). Essentially, direct evidence is a "smoking gun," such as a statement by a decisionmaker that he took an adverse employment action against the plaintiff for a prohibited reason. Id. (*citing* Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000)).

Alternatively, Ms. Wood may proceed under the indirect method, which requires her to show that she opposed an employment practice made unlawful under Title VII, that she was performing her job according to her employer's legitimate expectations, that she suffered an adverse employment action, and that she was treated less favorably than similarly-situated employees who did not engage in statutorily protected activity. *See* Hudson v. Chicago Transit Authority, 375 F.3d at 559; Mattson v. Caterpillar, Inc., 359 F.3d at 888.

If Ms. Wood carries her burden of establishing a prima facie case of retaliation, BMV still may prevail if it presents "unrebutted evidence of a non-invidious reason for the employment action at issue," Hudson v. Chicago Transit Auth., 375 F.3d at 559, that demonstrates it "would have taken the adverse employment action against the plaintiff even if [it] had no retaliatory motive; in that event the defendant is entitled to summary judgment because [it] has shown that the plaintiff wasn't harmed by retaliation." Stone v. City of Indianapolis Pub. Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002).

Ms. Wood proceeds on her retaliation claim under the direct evidence method. Ms. Wood argues that a reasonable jury could infer causation from the following scenario: she complained about the discriminatory practices at the Michigan City branch, the BMV identified her as a potential problem, transferred her to a location farther away from her home to work with all Caucasian employees (where it knew she could not and would not want to go), and then found a pretextual reason to fire her (unreasonably rejecting her physician's medical excuse for her not being able to transfer). As noted, Ms. Wood's transfer was not an adverse employment action under Title VII, thus leaving her September 2001 termination the only adverse employment action at issue for this claim. The record does not contain any direct evidence connecting the BMV's termination of Ms. Wood to anything other than her not providing the necessary medical information requested by the BMV, and ultimately, for violating the BMV's attendance policy.

Lacking sufficient direct evidence to proceed under the direct method, Ms. Wood must turn to the indirect burden-shifting method. The BMV argues that Ms. Wood can't establish the prima facie case of retaliation because she has not identified a similarly-situated employee who was treated more favorably than she was — specifically, that the BMV has not fired someone who never reported to work. The court agrees that the record doesn't contain the requisite identification of a similarly-situated person who was not terminated for failing to appear to work.

In the interest of completeness, the court also addresses the BMV's argument that even if Ms. Wood could establish a prima facie case of retaliation, the company has a legitimate non-discriminatory reason for its actions. The BMV insists Ms. Wood's termination was not based on her race, but, instead, was the sole result of Ms. Wood's not meeting the company's legitimate attendance policy.

Were the court to assume that Ms. Wood satisfied the requirements of a prima facie case with respect to her retaliation claim, *see* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); Hall v. Bodine Elec. Co., 276 F.3d 345, 357-358 (7th Cir. 2002) ("[W]e will assume [plaintiff] has made out a prima facie case, and move directly to the question of pretext. We do so not because we are convinced Hall has established a prima facie case of retaliation, but because our analysis of that issue would substantially overlap with the question of pretext."), she still couldn't prevail because she hasn't presented evidence from which a jury could reasonably infer or conclude that BMV's reason for terminating her was pretextual. *See* Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 508 (7th Cir. 2004).

Pretext means "a lie, specifically a phony reason for some action," Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995), completely lacking a factual basis, *see* Jordan v. Summers, 205 F.3d 337,

343 (7th Cir. 2000), and "unworthy of credence, thus raising the inference that the real reason is discriminatory [or retaliatory]." Essex v. United Parcel Serv., 111 F.3d 1304, 1309 (7th Cir. 1997). To demonstrate pretext, then, Ms. Wood must produce evidence that amply supports the claim that the proffered reason of the company wasn't its true motivation or sufficient to motivate its actions. O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002).

Ms. Wood argues that the BMV unreasonably deemed her medical ailment unsatisfactory to excuse her from reporting to the Chesterton branch. She says Dr. Kosinski, her treating physician, provided all the information that was required, and that she didn't need to assist the BMV to supplement his information.

The BMV responds that it placed Ms. Wood on authorized leave with pay for nearly a month as it sought specific information on the medical reason that Ms. Wood could not report to the Chesterton branch. While the BMV accepted Dr. Kosinski's initial medical explanation, it contacted him three times for job-specific information required to maintain Ms. Wood on authorized leave with pay. The BMV also sent a letter to Ms. Wood requesting her assistance in obtaining this information, a request Ms. Wood acknowledges she declined. In the same letter, the BMV explained that without the requested information, Ms. Wood would be placed on unauthorized leave without pay, thus subjecting her to a possible violation of the attendance policy.

The record does not support Ms. Wood's contention that the BMV's reason for terminating her employment was pretextual. The unrebutted evidence is that after nearly two months of fruitless requests for medical information from Ms. Wood's physician (without the requested help from Ms. Wood), the BMV placed Ms. Wood on unauthorized leave without pay. Ms. Wood acknowledges she was aware that failing to provide the requested information would subject her to the reporting

13

requirements that come with being on unauthorized leave. Because Ms. Wood admittedly never reported to the Chesterton branch for work, the BMV terminated her for violating the attendance policy.

Based on the record, Ms. Wood has not made the prima facie case of her retaliatory discharge claim, and even if she could, the BMV's reason for terminating Ms. Wood was not pretextual. *See* Green v. National Steel Corp., 197 F.3d 894, 899 (7th Cir. 1999) ("if an employer acted in good faith and with an honest belief, we will not second-guess its decisions"). The BMV is entitled to summary judgment on this claim.

IV. CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment [Doc. No. 30] is GRANTED as to all claims in the plaintiff's amended complaint. The court DIRECTS the clerk to enter judgment in favor of the defendant.

SO ORDERED.

ENTERED: April 22, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court